(Slip Opinion) OCTOBER TERM, 2025 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HAIN CELESTIAL GROUP, INC., ET AL. *v.* PALMQUIST, INDIVIDUALLY AND AS NEXT FRIEND OF E. P., A MINOR, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 24–724.   Argued November 4, 2025—Decided February 24, 2026

Respondents Sarah and Grant Palmquist fed their child E. P. baby food that was made by petitioner Hain Celestial Group, Inc., and that they purchased from petitioner Whole Foods Market, Inc.  When E. P. was 2½ years old, he began exhibiting serious developmental disorders and was diagnosed with a range of physical and mental conditions that some doctors attributed to heavy-metal poisoning.  In 2021, a subcommittee of the U. S. House of Representatives released a staff report finding that certain baby foods, including Hain's, contained elevated levels of toxic heavy metals.  Following the report's release, the Palmquists sued both Hain and Whole Foods in Texas state court, alleging state-law product liability and negligence claims against Hain, and state-law breach-of-warranty and negligence claims against Whole Foods.  Hain, a Delaware corporation with a principal place of business in New York, removed the case to federal court based on diversity of citizenship, but confronted a problem: Federal courts may exercise diversity jurisdiction only when no adverse party is from the same State, but Whole Foods and the Palmquists are all Texas citizens.  As a result, the District Court lacked jurisdiction as the case stood upon removal.  Hain sought to cure this problem by arguing in its notice of removal that Whole Foods had been improperly joined in the lawsuit and should be dismissed, which would have established complete diversity between Hain and the Palmquists.  The District Court agreed with Hain, dismissed Whole Foods, and denied the Palmquists' motion to remand.  The case then went to trial against

Hain alone in federal court. The District Court granted Hain's motion for judgment as a matter of law on all claims, explaining that the Palmquists had failed to present sufficient evidence to prove causation. On appeal, the Fifth Circuit reversed the District Court's improper-joinder decision and dismissal of Whole Foods. Because Whole Foods had been improperly dismissed, the Fifth Circuit concluded that the District Court lacked diversity jurisdiction, that the District Court's judgment had to be vacated, and that the case had to be remanded to state court. This Court granted certiorari to resolve a divide among the Courts of Appeals on whether vacatur is required in these circumstances.

*Held*: Because the District Court's erroneous dismissal of Whole Foods did not cure the jurisdictional defect that existed when this case was removed to federal court, the Fifth Circuit correctly vacated the judgment in Hain's favor. Pp. 4–11.

(a) Federal courts are courts of limited jurisdiction, and a federal court of appeals must "satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." *Mitchell* v. *Maurer*, 293 U. S. 237, 244. In most cases, federal appellate courts assess the district court's jurisdiction based on "the state of facts that existed at the time of filing." *Grupo Dataflux* v. *Atlas Global Group, L. P.*, 541 U. S. 567, 571. If the court of appeals concludes that the district court lacked jurisdiction over the case when it was filed in or removed to federal court, then the court of appeals typically must vacate any judgment on the merits.

One exception to this general rule is relevant here: If a district court cures a jurisdictional defect before final judgment, then the court of appeals is not required to vacate that judgment even if, at some earlier point in the case, the district court lacked jurisdiction. The Court discussed this exception in *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61, in which the nondiverse defendant was fully dismissed with all of the parties' consent through a partial final judgment under Federal Rule of Civil Procedure 54(b), leaving behind a completely diverse set of parties before trial commenced. In those circumstances, the Court held that the jurisdictional defect had been cured and the verdict could stand despite the District Court's earlier "*statutory* misstep" in denying the motion to remand. *Id.*, at 73. On the other hand, the Court stated, had the jurisdictional defect not been cured and instead "lingered through judgment," then vacatur would have been required. *Id.*, at 76–77. Pp. 5–7.

(b) The core dispute in this case is whether Whole Foods's erroneous dismissal before final judgment cured the jurisdictional defect that existed at the time of removal. It did not. The District Court's dismissal of Whole Foods as improperly joined was both erroneous and

"[i]nterlocutory," meaning it did "not dispose of the whole case" and "merge[d] into the final judgment" for "revie[w] on appeal." *Dupree* v. *Younger*, 598 U. S. 729, 734, 735. When the Fifth Circuit reversed the District Court's error, it restored Whole Foods to the case and thus destroyed complete diversity. As a result, the jurisdictional defect "lingered through judgment" uncured and the judgment "must be vacated." *Caterpillar*, 519 U. S., at 77.

Hain argues that the correctness of the District Court's dismissal is irrelevant because the parties were completely diverse by the time of final judgment, but the Court has never held that a district court can create jurisdiction through its own mistakes. A rule to the contrary would permit courts to enlarge their jurisdiction beyond the limits Congress imposed. Hain also appeals to efficiency, arguing that it would be wasteful to send this case back to state court for a new trial. The "considerations of finality, efficiency, and economy" recognized in *Caterpillar*, 519 U. S., at 75, however, were relevant only to excusing noncompliance with the removal statute's requirement of complete diversity at the time of removal after a jurisdictional defect has been properly and finally cured. As to the jurisdictional requirement itself, *Caterpillar* held that an uncured jurisdictional defect means that "the judgment must be vacated." *Id.*, at 76–77. Pp. 7–9.

(c) Finally, Hain argues that Whole Foods should now be dismissed under Federal Rule of Civil Procedure 21, which permits a federal court to "add or drop a party" "on just terms." In *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U. S. 826, 833, 837–838, the Court held that courts may use Rule 21 "to dismiss a dispensable nondiverse party" in appropriate circumstances, but must "carefully consider whether the dismissal . . . will prejudice any of the parties in the litigation." This case is unlike *Newman-Green*, in which the plaintiff sought the dismissal, because here a defendant is seeking dismissal of another, nondiverse defendant. The identity of the party asking for the dismissal is important because "[t]he plaintiff is 'the master of the complaint,'" and generally has the right to choose whether to proceed in federal or state court. *Royal Canin U. S. A., Inc.* v. *Wullschleger*, 604 U. S. 22, 35. Hain's proposed use of Rule 21 would force the Palmquists to litigate this case in federal court against their wishes and despite their right to control the forum for this case. See *Atlantic Marine Constr. Co.* v. *United States Dist. Court for Western Dist. of Tex.*, 571 U. S. 49, 63. The Palmquists exercised their right to choose a state forum by purposefully and properly joining a nondiverse defendant against whom they could not proceed in federal court, and diligently asserted that right by promptly moving to remand the case to state court. Rule 21 does not permit a court or a defendant to override their choice in these circumstances. Pp. 9–10.

Syllabus

103 F. 4th 294, affirmed and remanded.

SOTOMAYOR, J., delivered the opinion for a unanimous Court. THOMAS, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

―――――

No. 24–724

―――――

## THE HAIN CELESTIAL GROUP, INC., ET AL., PETITIONERS *v.* SARAH PALMQUIST, INDIVIDUALLY AND AS NEXT FRIEND OF E. P., A MINOR, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[February 24, 2026]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Federal courts are courts of limited jurisdiction and generally can resolve only the cases that Congress grants them power to hear.  One class of cases over which Congress has given federal courts jurisdiction is "diversity" cases between "citizens of different States."  28 U. S. C. §1332(a).

If a federal court of appeals finds that a district court lacked jurisdiction over a case (for example, because the parties turned out not to be from different States), then the district court's judgment on the merits must be vacated.  A district court's judgment can stand, however, if the district court "cured" the jurisdictional defect before entering final judgment, such as by properly dismissing a nondiverse party from the case.

This case asks whether a district court's erroneous dismissal of a nondiverse party before final judgment can cure a jurisdictional defect that existed when the case was removed to federal court.  The Fifth Circuit held that it cannot, and this Court agrees.  In these circumstances, the

district court's final judgment must be vacated for lack of jurisdiction.

## I

Respondents Sarah Palmquist and Grant Palmquist have a young son, E. P., who was born in 2014. For the first two years of E. P.'s life, the Palmquists fed him baby food that was made by petitioner Hain Celestial Group, Inc., and that they purchased from petitioner Whole Foods Market, Inc. At first, E. P.'s development progressed ordinarily, and he was a healthy child. Things changed when E. P. was 2½ years old. He began exhibiting serious developmental disorders and was diagnosed with a range of physical and mental conditions. After identifying high levels of arsenic, lead, and mercury in E. P.'s blood tests, some doctors attributed these conditions to heavy-metal poisoning. In 2021, years after E. P.'s diagnosis, a subcommittee of the U. S. House of Representatives Committee on Oversight and Reform released a staff report finding that certain baby foods, including Hain's, contained elevated levels of toxic heavy metals. See Staff Report, Subcommittee on Economic and Consumer Policy, Baby Foods Are Tainted With Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury 2–4 (Feb. 4, 2021).

Following the report's release, the Palmquists sued both Hain and Whole Foods in Texas state court. As to Hain, the Palmquists alleged state-law product liability and negligence claims. As to Whole Foods, the Palmquists alleged state-law breach of warranty and negligence claims based on Whole Foods's alleged misrepresentation of Hain's products as safe for consumption.

Hain removed the case to federal court based on the parties' diversity of citizenship. At the time of removal, however, Hain confronted a problem. Generally, 28 U. S. C. §1332(a) allows federal courts to exercise jurisdiction only when the parties are completely diverse, which means that

no adverse party is from the same State, and the amount in controversy exceeds $75,000. *Lincoln Property Co.* v. *Roche*, 546 U. S. 81, 89 (2005). As the case stood upon removal, though, this requirement was not met. The Palmquists were Texas citizens. Hain was a Delaware corporation with a principal place of business in New York, and so was both a Delaware and New York citizen. Whole Foods, however, was headquartered in Texas and so was, like the Palmquists, a Texas citizen. Because Whole Foods and the Palmquists were all Texas citizens, the parties were not completely diverse.

Hain nevertheless argued in its notice of removal that removal was proper because Whole Foods had been improperly joined and should be dismissed, which would leave only parties who were completely diverse in federal court. The Palmquists disagreed, argued that Whole Foods was properly joined, and moved to remand the case to state court given the lack of diversity jurisdiction.[1]

The District Court sided with Hain. Under Fifth Circuit precedent, which was not disputed here, a defendant is improperly joined if the plaintiff fails to "state a claim for relief that is facially plausible" against the defendant. 103 F. 4th 294, 304 (2024); see *Smallwood* v. *Illinois Central R. Co.*, 385 F. 3d 568, 573 (2004) (en banc). Applying that test, the District Court concluded that the Palmquists had not alleged a plausible claim against Whole Foods. It thus dismissed Whole Foods and denied the Palmquists' motion to remand.

The Palmquists then went to trial against Hain in federal court. After the Palmquists rested their case, Hain moved for judgment as a matter of law on all claims. The District Court granted that motion in full, explaining that the

---

[1] Improper joinder is also often referred to as "fraudulent joinder." Because there are no allegations of fraud by the Palmquists in this case, the Court uses the term "improper joinder."

Palmquists had failed to present sufficient evidence to the jury to prove that "the ingestion of heavy metals can cause the array of symptoms that [E. P.] suffers from, much less any evidence of at what level those metals would have to be ingested to bring about those symptoms." 103 F. 4th, at 300. The Palmquists appealed that judgment along with the District Court's improper-joinder decision that had dismissed Whole Foods.

The Fifth Circuit reversed the improper-joinder decision and vacated the District Court's judgment. The Court of Appeals held that Whole Foods was properly joined because the Palmquists had plausibly alleged that Whole Foods had violated state law by misrepresenting Hain's products as safe. Given that Whole Foods had been erroneously dismissed, the action was not diverse. The Court of Appeals then concluded that the District Court lacked jurisdiction and that the judgment in Hain's favor had to be vacated. The Fifth Circuit denied en banc review.

Hain and Whole Foods filed a timely petition for certiorari seeking review of the Fifth Circuit's holding that the District Court's judgment must be vacated. One other Court of Appeals has held that vacatur is not required in these circumstances, while another agrees with the Fifth Circuit and has held that it is.[2] The Court granted certiorari to resolve the divide among the Courts of Appeals. See 604 U. S. 1267 (2025).

## II

It is important to emphasize at the outset "two 'givens' in this case." *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61, 70 (1996). First, no party asks this Court to revisit the Fifth Circuit's holding that the District Court's improper-joinder decision was incorrect and that Whole Foods should not have been

---

[2] Compare *Junk* v. *Terminix Int'l Co.*, 628 F. 3d 439, 447, 450–451 (CA8 2010), with *Henderson* v. *Washington Nat. Ins. Co.*, 454 F. 3d 1278, 1284–1285 (CA11 2006).

dismissed. See Brief for Petitioners 7, n. 1. Second, no party disputes that, had the District Court performed the joinder analysis correctly when the case was initially removed, it would have lacked jurisdiction and would have been required to remand the case to state court. See 28 U. S. C. §§1332(a), 1447(c). What remains for this Court to decide is whether the District Court, having erroneously dismissed Whole Foods, had jurisdiction to enter a final judgment as to Hain. It did not.

## A

Federal courts "are all of limited jurisdiction, and their proceedings are erroneous, if the jurisdiction be not shown upon them." *Kempe's Lessee* v. *Kennedy*, 5 Cranch 173, 185 (1809) (Marshall, C. J.). Because of this limitation on federal courts' authority, a federal court of appeals must "satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." *Mitchell* v. *Maurer*, 293 U. S. 237, 244 (1934). In most cases, federal appellate courts assess the district court's jurisdiction based on "the state of facts that existed at the time of filing." *Grupo Dataflux* v. *Atlas Global Group, L. P.*, 541 U. S. 567, 571 (2004). If the court of appeals concludes that the district court lacked jurisdiction over the case when it was filed in or removed to federal court, then the court of appeals typically must vacate any judgment on the merits. See *Williams* v. *Zbaraz*, 448 U. S. 358, 368 (1980); *American Fire & Casualty Co.* v. *Finn*, 341 U. S. 6, 17–18 (1951).

There is, however, one exception to the general rule relevant to this case. If a district court "cures" a jurisdictional defect prior to final judgment, then the court of appeals is not required to vacate that judgment even if, at some earlier point in the case, the district court lacked jurisdiction.

The Court discussed this exception in *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61. In *Caterpillar*, Lewis was a citizen of Kentucky who brought a product-liability suit in state court

against Caterpillar, a Delaware- and Illinois-based equipment manufacturer, and Whayne Supply, a Kentucky company that serviced Caterpillar equipment. *Id.*, at 64–65. Lewis's insurer (a Massachusetts corporation) intervened as a plaintiff and asserted claims against both Whayne and Caterpillar. *Id.*, at 65. At that point, complete diversity was lacking, as there was one plaintiff (Lewis) and one defendant (Whayne) from Kentucky.

Lewis then settled his claims against Whayne. *Ibid.* Caterpillar, thinking that the settlement would result in Whayne's dismissal from the case, promptly removed the case to federal court. *Ibid.* Lewis moved to remand, pointing out that Whayne was still in the case because the insurer had not settled its claim against Whayne. *Id.*, at 65–66. Without addressing Lewis's argument, the District Court erroneously denied the motion to remand, keeping the case in federal court. *Id.*, at 66. Whayne eventually settled with the insurer and was voluntarily dismissed from the case via a partial final judgment under Federal Rule of Civil Procedure 54(b). See App. A to Brief for Respondents. That dismissal left three completely diverse parties in the case: Lewis (from Kentucky), the insurer (from Massachusetts), and Caterpillar (from Delaware and Illinois).

The case then went to trial, at which Caterpillar prevailed. 519 U. S., at 66–67. Lewis appealed, and the Sixth Circuit vacated the verdict. It held that the District Court should have remanded the case because, at the time of removal, complete diversity did not exist. *Id.*, at 67.

This Court reversed. It held that, because Whayne had been fully dismissed, "the *jurisdictional* defect [had been] cured, *i.e.*, complete diversity [had been] established before the trial commenced." *Id.*, at 73. Because "considerations of finality, efficiency, and economy become overwhelming" after "a diversity case has been tried in federal court," the Court held that the verdict could stand despite the District Court's "*statutory* misstep" in denying the motion to

remand. *Id.*, at 73, 75, 77. On the other hand, the Court stated, had the jurisdictional defect not been cured and instead "lingered through judgment," then vacatur would have been required. *Id.*, at 76–77.

B

The core dispute in this case is whether Whole Foods's erroneous dismissal before final judgment cured the jurisdictional defect that existed at the time of removal. It did not. Because the jurisdictional defect lingered through judgment, the judgment "must be vacated." *Id.*, at 77.

When Hain removed this case to federal court, the District Court was required to determine whether it had jurisdiction by ensuring that none of the plaintiffs was from the same State as any of the defendants. Because Whole Foods (a defendant) and the Palmquists (the plaintiffs) were all Texas citizens, the District Court lacked jurisdiction. It then tried to cure that jurisdictional defect by dismissing Whole Foods as improperly joined.

That dismissal, the Fifth Circuit held, was erroneous. It was also "[i]nterlocutory," meaning that it did "not dispose of the whole case." *Dupree* v. *Younger*, 598 U. S. 729, 734 (2023). The "'general rule'" is that parties cannot immediately appeal interlocutory orders and must instead wait until the end of the case, when those orders "merge into the final judgment" and are "reviewable on appeal" from that judgment. *Id.*, at 735 (quoting *Quackenbush* v. *Allstate Ins. Co.*, 517 U. S. 706, 712 (1996)). Under that general rule, once the District Court entered final judgment in Hain's favor, the court's earlier jurisdictional holding merged into the judgment and was reviewable by the Court of Appeals as part of the Palmquists' post-trial appeal.

On appeal, the question before the Court of Appeals was whether the District Court had correctly dismissed Whole Foods at the outset. If it had, then this case would be more like *Caterpillar*, where the District Court correctly and

finally dismissed Whayne with the parties' consent and left behind a completely diverse set of parties.

Whole Foods, however, was not dismissed correctly, and the interlocutory nature of that dismissal meant that it was reversible on appeal from the final judgment in Hain's favor. Whole Foods thus was only temporarily and erroneously removed from the case; it was not "gone for good." *Royal Canin U. S. A., Inc.* v. *Wullschleger*, 604 U. S. 22, 33 (2025). When the Fifth Circuit reversed the District Court's error, it restored Whole Foods to the case and correctly held that the jurisdictional defect had not been cured. That meant that the defect "lingered through judgment" and that the District Court's judgment therefore "must be vacated." *Caterpillar*, 519 U. S., at 77.

In Hain's view, the correctness of the District Court's dismissal is irrelevant because, like in *Caterpillar*, the parties were completely diverse by the time of final judgment. Hain is mistaken. This Court has never held that a district court can create jurisdiction through its own mistakes. A rule to the contrary would permit courts to enlarge their jurisdiction beyond the limits Congress imposed. Cf. *Kokkonen* v. *Guardian Life Ins. Co. of America*, 511 U. S. 375, 377 (1994) ("Federal courts . . . possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree" (citations omitted)).

Hain also appeals to efficiency, arguing that it would be wasteful to send this case back to state court for a new trial. This argument also fails. To be sure, *Caterpillar* recognized that "considerations of finality, efficiency, and economy become overwhelming" after "a diversity case has been tried in federal court." 519 U. S., at 75. Those considerations, however, were relevant only to excusing noncompliance with the removal statute's requirement "that there be complete diversity at the time of removal" after a jurisdictional defect had been properly and finally cured. *Grupo Dataflux*, 541 U. S., at 574. As to the jurisdictional requirement

itself, *Caterpillar* held that an uncured jurisdictional defect means that "the judgment must be vacated," 519 U. S., at 76–77, regardless of how efficient it might be to leave the judgment in place. That the parties may need to litigate a new trial in state court does not change the jurisdictional analysis or make the District Court's error an effective cure.[3]

## III

As a fallback, Hain argues that, even if the jurisdictional defect was not cured, Whole Foods should now be dismissed under Federal Rule of Civil Procedure 21. That Rule permits a federal court "on its own" to "add or drop a party" "on just terms." This argument is unavailing.[4]

In *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U. S. 826 (1989), this Court held that, in appropriate circumstances, courts may use Rule 21 "to dismiss a dispensable nondiverse party." *Id.*, at 833, 837. To do so, courts must "carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation," as "[i]t may be that the presence of the nondiverse party produced a tactical advantage for one party or another." *Id.*, at 838.

---

[3] Other procedural mechanisms may be available to reduce wasteful litigation. For instance, both partial final judgment under Federal Rule of Civil Procedure 54(b) and certification under 28 U. S. C. §1292(b) allow district courts to certify matters for early appeal. Those procedures could help resolve any uncertainty over whether a nondiverse party should remain in the case at the time of removal and avoid the need to wait until a post-trial appeal. See Tr. of Oral Arg. 20–23, 34–36.

[4] The Palmquists contend the Rule 21 argument was forfeited, but it is fairly included within the question presented, was raised in the petition for certiorari, and was pressed before the Fifth Circuit. See Pet. for Cert. i, 22–24 (arguing that "appellate courts . . . ha[ve] dismissed dispensable nondiverse parties in order to preserve jurisdiction as to diverse parties" and citing *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U. S. 826, 834–836 (1989)); Brief for Whole Foods in No. 23–40197 (CA5), p. 16; see also this Court's Rule 14.1(a).

This case is very different from *Newman-Green.* Here, the defendants are seeking dismissal of a nondiverse defendant, whereas in *Newman-Green*, the plaintiff sought the dismissal. *Id.*, at 829. The identity of the party asking for the dismissal is important because "[t]he plaintiff is 'the master of the complaint,'" and generally has the right to choose whether to proceed in federal or state court. *Royal Canin*, 604 U. S., at 35. Dismissing a nondiverse party with the plaintiff's consent is consistent with that right, as is a plaintiff's ability to amend the complaint to "bring the suit either newly within or newly outside a federal court's jurisdiction." *Id.*, at 35–36.

Hain's proposed use of Rule 21, however, would force the Palmquists to litigate this case in federal court against their wishes and despite their right to control the forum for this case. Hain cites no cases in which a court used Rule 21, over the plaintiff's consistent objections, to dismiss a properly joined defendant to preserve jurisdiction over an incorrectly removed case that never should have been in federal court. That lack of authority is not surprising. The prejudice to the plaintiff in such circumstances is clear, for "plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous." *Atlantic Marine Constr. Co.* v. *United States Dist. Court for Western Dist. of Tex.*, 571 U. S. 49, 63 (2013). The Palmquists exercised their right to choose a state forum by purposefully and properly joining a nondiverse defendant against whom they could not proceed in federal court, and diligently asserted that right by promptly moving to remand the case to state court. The decision to structure their case in this way was the Palmquists' to make; Rule 21 does not permit a court or a defendant to override their choice in these circumstances.[5]

---

[5] Some courts have used Rule 21 to dismiss nondiverse parties joined after the case was properly removed to federal court. See, *e.g.*, *Gorfinkle* v. *U. S. Airways, Inc.*, 431 F. 3d 19, 21–23 (CA1 2005). Because Whole Foods was named in the original state-court complaint in this case, the

## IV

The District Court's erroneous dismissal of Whole Foods did not cure the jurisdictional defect that existed when this case was improperly removed to federal court.  The Court of Appeals therefore correctly vacated the judgment in Hain's favor.  The judgment of the Court of Appeals is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

--------

Court expresses no view on whether using Rule 21 to dismiss a non-diverse party added after a proper removal is appropriate.  The Court also expresses no view as to Rule 21's role in cases originally filed by plaintiffs in federal court.  See, *e.g.*, *Publicker Industries, Inc.* v. *Roman Ceramics Corp.*, 603 F. 2d 1065, 1067, 1069 (CA3 1979).

# SUPREME COURT OF THE UNITED STATES

---

No. 24–724

---

## THE HAIN CELESTIAL GROUP, INC., ET AL., PETITIONERS *v.* SARAH PALMQUIST, INDIVIDUALLY AND AS NEXT FRIEND OF E. P., A MINOR, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[February 24, 2026]

JUSTICE THOMAS, concurring.

I join the Court's opinion in full. I write separately to note my skepticism of the doctrine of "improper joinder," which the District Court invoked to dismiss Whole Foods in this case. The doctrine appears to allow federal courts to enlarge their jurisdiction by assessing the merits of claims over which they lack jurisdiction.

"Federal courts are courts of limited jurisdiction." *Kokkonen* v. *Guardian Life Ins. Co. of America*, 511 U. S. 375, 377 (1994). As "an essential ingredient of separation and equilibration of powers," the Constitution gives Congress broad power over the scope of federal courts' jurisdiction. *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 101 (1998). "When we assume jurisdiction too hastily, we risk aggrandizing ourselves at the expense of the political branches." *Monsalvo Velazquez* v. *Bondi*, 604 U. S. 712, 737 (2025) (THOMAS, J., dissenting). Accordingly, if a federal court determines that it lacks jurisdiction in a case, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514 (1869).

Federal courts therefore "must determine that they have jurisdiction before proceeding to the merits." *Lance* v.

*Coffman*, 549 U. S. 437, 439 (2007) (*per curiam*). "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co.*, 523 U. S., at 94–95 (internal quotation marks omitted). "For a court to pronounce upon" the merits "when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Id.*, at 101–102.

In this case, federal jurisdiction was based on diversity of citizenship. The removing defendant, Hain Celestial Group, invoked federal jurisdiction under 28 U. S. C. §1332(a), which gives district courts jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." This Court has always interpreted §1332(a)'s language "to require 'complete diversity,'" meaning that a federal court can exercise jurisdiction only if no plaintiff shares state citizenship with any defendant. *Carden* v. *Arkoma Associates*, 494 U. S. 185, 187 (1990) (citing *Strawbridge* v. *Curtiss*, 3 Cranch 267 (1806)).

Although the parties in this case were not completely diverse, the District Court exercised jurisdiction based on the doctrine of "improper joinder." Under that doctrine, federal courts exercise jurisdiction over cases that originally involved nondiverse defendants by first deeming the claims against those nondiverse defendants sufficiently weak on the merits and then dismissing them. See, *e.g.*, *International Energy Ventures Mgmt., L.L.C.* v. *United Energy Group, Ltd.*, 818 F. 3d 193, 205–209 (CA5 2016). Here, the Palmquists, Texas citizens, sued both an out-of-state defendant, Hain Celestial Group, and a Texas defendant, Whole Foods. The District Court therefore lacked jurisdiction over the case when it was removed to federal court. The District Court nonetheless proceeded to dismiss Whole Foods based on its merits assessment that there was not a "reasonable basis to predict that [the Palmquists] could

recover from Whole Foods" under Texas products-liability law. App. to Pet. for Cert. 25a–26a. After dismissing Whole Foods, it adjudicated the claims against Hain Celestial on the merits.

The Fifth Circuit vacated that merits judgment for lack of jurisdiction, but not because it thought that conducting an improper-joinder inquiry was inappropriate. 103 F. 4th 294, 302–307 (2024). It simply thought that the Palmquists possibly stated meritorious claims against Whole Foods under Texas law. See *id.*, at 305–307. It reaffirmed that the improper-joinder doctrine allows federal courts to engage in a "Rule 12(b)(6)-type analysis" of claims against nondiverse defendants, albeit with legal ambiguities resolved in the plaintiffs' favor. *Id.*, at 306. Federal Rule of Civil Procedure 12(b)(6) dismissals, of course, are merits determinations. See *Federated Department Stores, Inc.* v. *Moitie*, 452 U. S. 394, 399, n. 3 (1981).

Other federal courts adopt a similar approach to dismiss claims against nondiverse parties. See, *e.g.*, *Johnson* v. *Midwest Div.-RBH, LLC*, 88 F. 4th 731, 735–736 (CA8 2023); *Jerome-Duncan, Inc.* v. *Auto-By-Tel, L. L. C.*, 176 F. 3d 904, 907–909 (CA6 1999); *Legg* v. *Wyeth*, 428 F. 3d 1317, 1324, 1320–1325 (CA11 2005). Courts justify this approach based on a group of this Court's early-20th-century precedents that recognized a doctrine called fraudulent joinder. See, *e.g.*, *Alabama Great Southern R. Co.* v. *Thompson*, 200 U. S. 206, 217 (1906).*

---

*Many Circuits still use the "fraudulent joinder" term today, even when they engage in the same merits analysis that the Fifth Circuit more accurately calls improper joinder. See, *e.g.*, *Johnson*, 88 F. 4th, at 735–736 (holding that "joinder . . . was fraudulent" because state-law claim was unlikely to succeed on the merits); *Jerome-Duncan, Inc.*, 176 F. 3d, at 907–909 (affirming "fraudulent joinder" dismissal because of weakness of claim under state law); *Cline* v. *Dart Transit Co.*, 804 Fed. Appx. 307, 312 (CA6 2020) (holding that "fraudulent joinder occurred" because plaintiff lacked "a colorable cause of action").

But this Court's precedents do not support the lower courts' more recent approach. As I read them, this Court's "fraudulent joinder" precedents concerned only whether the plaintiff avoided federal diversity jurisdiction by bad faith or actual fraud—such as lying about a party's conduct or citizenship. See *Alabama Great Southern R. Co.*, 200 U. S., at 218 (asking whether the plaintiff "attempt[ed] to commit a fraud upon the jurisdiction of the Federal courts"); *Illinois Central R. Co.* v. *Sheegog*, 215 U. S. 308, 316 (1909) (asking whether a claim was "fraudulent and false"); *Mecom* v. *Fitzsimmons Drilling Co.*, 284 U. S. 183, 190 (1931) (asking whether the plaintiff committed "actual fraud"). These precedents were limited to cases of "extreme abuse." *Murriel-Don Coal Co.* v. *Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 596 (ED Ky. 2011) (Thapar, J.). Unlike the lower courts' more recent decisions, they did not appear to turn on the strength of the claims on the merits.

Federal courts sitting in diversity likely cannot dismiss nondiverse parties based on their view of the merits of the claims against those parties. Doing so appears unfaithful to Congress's limits on our diversity jurisdiction and inconsistent with this Court's precedents. As Judge Thapar has put it, the improper-joinder doctrine "requires federal courts to exercise jurisdiction where none exists over questions of state law that the state courts are better suited to address themselves." *Id.*, at 597. In a future case where the issue is briefed and squarely presented, this Court should consider the propriety of the improper-joinder doctrine.